*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ONDA P. PAYNE,

Plaintiff-Appellant,

v

OHIO NATIONAL LIFE ASSURANCE
CORPORATION,

Defendant-Appellee.

UNPUBLISHED
November 19, 2019

No. 344060
Wayne Circuit Court
LC No. 17-013749-CK

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Plaintiff, Onda P. Payne ("plaintiff"), appeals as of right from the trial court's order granting summary disposition in favor of defendant, Ohio National Life Assurance Corporation ("Ohio National"). In 1984, Ohio National issued a life insurance policy to plaintiff's husband, Charles W. Payne ("Payne"). Plaintiff was the named beneficiary. Payne died on January 30, 2017, whereupon plaintiff submitted proof of Payne's death to Ohio National and requested payment of the death proceeds under the policy. Ohio National refused to pay, contending that the policy had lapsed in 1999 for nonpayment of premiums. The trial court granted summary disposition in favor of Ohio National pursuant to MCR 2.116(C)(7) (claim is barred by statute of limitations) on the finding that plaintiff's claim accrued no later than 1999 and became time-barred in 2005. We reverse and remand.

## I. BACKGROUND

The policy stated that it would provide $35,000 of death proceeds to the named beneficiary "after we receive due proof that the Insured died while this contract was in force." In relevant part, the policy also contained a grace period provision, which provided:

A premium is due on any Process Day on which the contract value, less loans in effect, is not enough to cover the charges then due. The required premium will equal the charges then due. We will mail you, and any assignee of record, notice of the amount due. The contract will stay in force for 60 days after the due date of the required premium, or, if later, until 31 days after notice of the amount due

-1-

has been mailed, but not past the Maturity Date. If you do not pay the required premium by the end of this grace period, the contract will end with no value. We will send you a notice before the contract ends. If death occurs during a grace period, any required premium then due will be subtracted from the death proceeds.

The policy also specified limited circumstances under which it could be reinstated "[i]f this contract ends for failure to pay a required premium."

As noted, Ohio National refused to pay the $35,000 in death proceeds to plaintiff, maintaining that the policy had lapsed in 1999 for nonpayment of premiums. Plaintiff demanded that Ohio National provide a copy of the written notice of cancellation that it was required to send under the policy's grace period provision or, if such documentary evidence could not be produced, that it pay the death proceeds. When Ohio National did not pay, plaintiff filed this lawsuit alleging breach of contract. Plaintiff contended that pursuant to the policy's grace period provision, the contract would stay in place until 31 days after notice of the amount due had been mailed. Plaintiff asserted that Ohio National had not provided a copy of the notice that set forth the required premium due or proof that such notice was mailed to Payne.

Ohio National argued that plaintiff's claim arose out of Ohio National's alleged failure to provide Payne with the contractually-required notice before the policy lapsed. Consequently, Ohio National concluded that the "wrong" or "breach" at issue occurred in 1999, when the policy was allegedly wrongly terminated. Thus, the applicable six-year limitations period began running in 1999 and expired in 2005, making plaintiff's claim untimely when it was filed in 2017. However, Ohio National had a policy of retaining records for lapsed policies for only seven years, so it was unable to produce copies of the actual notices it allegedly mailed to Payne. Instead, Ohio National provided an affidavit and deposition testimony from its corporate representative, and a transaction history from its automated administration system, to show that: (1) no premium payments were made on the policy after November 16, 1998; (2) the policy terminated on June 17, 1999, for nonpayment of premiums; and (3) grace period notices were sent in April and May of 1999.

Plaintiff argued that the proceeds under the policy could not become payable until Payne's death. Therefore, her claim could not have accrued until January 30, 2017, when the proceeds became payable; only then could she, as the policy's beneficiary, have had a right to recover under the policy. Therefore, she concluded that the "breach" that triggered plaintiff's action was Ohio National's refusal to pay the claim on the contract in 2017, not the alleged failure to send out the requisite notices before terminating the policy in 1999. Plaintiff also argued that the policy provided that it would remain in force for 31 days after mailing notice of premiums due. She contended that Ohio National could not provide any "contemporaneous documentation" that ever mailed the requisite notices, and its corporate representative lacked personal knowledge of Ohio National's ordinary business customs or practices at the time. Consequently, plaintiff concluded that her claim was timely. Plaintiff never asserted that the required premium payments were made.

The trial court concluded that the breach, if there was one, occurred somewhere between 1998, when the last premium payment was made, and 1999, when the policy lapsed; not upon

plaintiff's attempt to recover the death proceeds under the policy. Thus, the court concluded that plaintiff's claim expired in 2005 and was time-barred. It granted summary disposition in Ohio National's favor accordingly. Plaintiff now appeals.

## II.  STANDARD OF REVIEW

We review de novo a trial court's grant or denial of a motion for summary disposition under MCR 2.116(C)(7). *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014). The reviewing court should generally accept all well-pleaded allegations as true and construe them in the nonmoving party's favor, but the court must also consider all admissible evidence, if any, submitted by the parties. *Id*. The moving party has the burden of proof. *Id*. A court reviewing a motion for summary disposition under MCR 2.116(C)(10) must consider all available evidence in the light most favorable to the non-moving party, and it should grant the motion only if reasonable minds could not differ regarding any material fact. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 443; 761 NW2d 846 (2008). "If summary disposition is granted under one subpart of the court rule when it was actually appropriate under another, the defect is not fatal and does not preclude appellate review as long as the record permits review under the correct subpart." *Detroit News, Inc v Policeman and Firemen Retirement Sys of Detroit*, 252 Mich App 59, 66; 651 NW2d 127 (2002) (quotation and citation omitted).

"We also review de novo the question whether a claim is barred by the statute of limitations and the issue of the proper interpretation and applicability of the limitations periods." *Stephens*, 307 Mich App at 227. "The interpretation of clear contractual language is an issue of law, which is reviewed de novo on appeal." *Tenneco*, 281 Mich App at 444. Although ambiguities should be construed against the drafter, insurance contracts must be read as a whole with the fundamental goal of effectuating the intent of the parties. *Id*. An issue is preserved for appellate review if it was raised in the trial court and pursued on appeal, irrespective of whether the issue was addressed by the trial court. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

## III.  ACCRUAL OF PLAINTIFF'S CLAIM

Plaintiff argues that the trial court erred in identifying the accrual date of her claim to recover proceeds under the policy as 1998 or 1999, when the policy allegedly lapsed. She maintains that her claim accrued on January 30, 2017, the date of Payne's death, at which time she, as the named beneficiary, had the right to recover death proceeds under the policy, but Ohio National refused to pay. We agree.

The applicable limitations period for a breach-of-contract action is six years after the claim first accrued. MCL 600.5807(9);[1] *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v*

---

[1] The applicable statutory subsection governing the limitations period for breach of contract claims was previously located at MCL 600.5807(8). Effective May 7, 2018, MCL 600.5807(8) was amended and renumbered to (9) by 2018 PA 15. The amendment did not otherwise make

*Bakshi*, 483 Mich 345, 355; 771 NW2d 411 (2009). Relevant to the instant matter, a claim "accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. "Thus, this Court has generally held that a cause of action for breach of contract accrues when the breach occurs, i.e., when the promisor fails to perform under the contract." *Blazer Foods, Inc v Restaurant Props*, 259 Mich App 241, 245-246; 673 NW2d 805 (2003).

Importantly, however, a breach of contract claim generally cannot accrue until the claim can actually be brought. *Seyburn*, 483 Mich at 355. Our Supreme Court "has held that the 'wrong' in MCL 600.5827 is 'the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty.' " *Frank v Linker*, 500 Mich 133, 147; 894 NW2d 574 (2017) (citation and quotation marks omitted). Thus, although a plaintiff need not have suffered damages for a breach of contract claim to accrue, the plaintiff must have suffered an "actionable harm." *Id*. at 150. In other words, a claim cannot accrue until such time as a plaintiff can legally bring a claim, because otherwise a claim could "be barred before any injury resulted." *Stephens*, 307 Mich App at 235-236 (quotation omitted).

As discussed, Ohio National contends that plaintiff's claim accrued in 1999, when Ohio National allegedly failed to provide notice or when it terminated the policy. Plaintiff contends that her claim accrued upon Payne's death in 2017, at which time she became entitled to recover death proceeds under the policy. To resolve this dispute, we must examine plaintiff's complaint as a whole to determine the gravamen of her claim, and we must examine the parties' contract to determine the applicable "wrong" underlying that claim. *Tenneco*, 281 Mich App at 457-458.

"In Michigan, it is firmly established that a beneficiary, including the wife of the insured if she is the one named, has no vested right in a life insurance policy in which the insured has reserved the right to change the beneficiary, but, in such event, has only a revocable expectancy contingent upon remaining the beneficiary until the death of the insured." *Wilson v Perdue*, 16 Mich App 80, 83; 167 NW2d 851 (1969) (citations omitted); see also *LaLonde v Roman Std Life Ins Co*, 269 Mich 330, 334; 257 NW 834 (1934), and *Dogariu v Dogariu*, 306 Mich 392, 406-407; 11 NW2d 1 (1943). Critically, under the policy's express terms, Payne was the owner and insured. Payne retained all contractual rights, including the right to change the beneficiary without the beneficiary's consent, during his lifetime. Consequently, plaintiff had no legal interest in or rights under the policy until Payne's death. Because she could not have brought an action under the policy before 2017, her claim cannot have accrued before 2017.

Equally importantly, the date upon which an *alleged* claim accrues does not depend on the *actual* substantive merits of that claim. Plaintiff's action is not premised upon any allegation that the policy was wrongfully terminated. Indeed, plaintiff does not assert that Ohio National's alleged failure to mail proper notice of premiums due constituted a breach of contract. As noted, plaintiff would have been incapable of bringing such a claim during Payne's lifetime. See *Rory v Continental Ins Co*, 473 Mich 457, 471-472 n 28; 703 NW2d 23 (2005) ("because the policy

---

any relevant substantial alterations. We refer to the amended version, which was in effect at the time the trial court entered its May 11, 2018 order granting summary disposition.

required actual proof of death, the cause of action did not accrue until death could be proven."). Rather, her claim is that the contractually required prerequisites to termination of the policy simply did not occur, so the policy was in force on January 30, 2017. Consequently, the "actionable harm" or "breach" alleged is clearly Ohio National's refusal to pay death proceeds to plaintiff under the policy. Thus, plaintiff's cause of action accrued in 2017, not in 1999.

Ohio National is not precluded from presenting as a substantive defense that the policy had validly lapsed during Payne's lifetime for nonpayment of premiums. Plaintiff could not have any greater rights as a beneficiary of the policy than Payne would have had. See MCL 600.1405 (a third-party beneficiary "has the same right to enforce said promise that he would have had if the said promise had been made directly to him as promisee."). If Ohio National had rightfully terminated the policy, it would have no duty to pay death proceeds to plaintiff under the policy. *Johnson v National Life & Accident Ins Co*, 257 Mich 335, 339; 241 NW 205 (1932). In contrast, if Ohio National wrongfully terminated the policy, it would remain obligated to pay proceeds to plaintiff even if the premiums were not paid. See *Thompson v Postal Life Ins Co*, 226 NY 363, 368; 123 NE 750 (1919) ("[a] forfeiture asserted without right leaves the policy intact."). However, that is a factual question, and the burden of proving that the policy had lapsed in accordance with its provisions is upon Ohio National. See *Wilson v Prudential Ins Co*, 276 Mich 232, 236; 267 NW 824 (1936). Whether Ohio National complied with the requisite notice requirements under the grace period provision was disputed, and whether the policy was in force at the time of Payne's death in 2017 was therefore likewise disputed.[2] Thus, no conclusive determination could be made that the statute of limitations expired in 1999. The trial court erred by granting summary disposition in Ohio National's favor pursuant to MCR 2.116(C)(7).

## IV. FACTUAL SUPPORT

Plaintiff next argues that the evidence presented was insufficient to establish as a matter of law that Ohio National properly terminated Payne's policy after providing the requisite notice. Thus, she contends that summary disposition would have been inappropriate under MCR 2.116(C)(10). As discussed, because plaintiff presented this argument to the trial court, this issue is preserved for our appeal even though the trial court did not address it. However, we conclude that it would be premature for us to address this argument. Ohio National brought a motion for summary disposition pursuant to MCR 2.116(C)(7), not MCR 2.116(C)(10). Without making any determination of the substantive reasonableness of plaintiff's argument, it addresses a hypothetical scenario that has not occurred, and we decline to speculate as to whether it will occur.

---

[2] We make no determination whether Ohio National provided sufficient evidence of its business practices in 1999 to establish a presumption that it mailed the grace period notices required by the policy. Whether Ohio National can establish a presumption of mailing is pertinent to its substantive defense, but we find it unnecessary to the resolution of Ohio National's motion pursuant to MCR 2.116(C)(7). As we will discuss, we decline to consider plaintiff's premature argument pertaining to a hypothetical motion under MCR 2.116(C)(10).

## V. CONCLUSION

We conclude that the trial court erred in granting summary disposition of plaintiff's claim to recover death proceeds under the policy under MCR 2.116(C)(7). Irrespective of the substantive merits of plaintiff's claim, it is premised on Ohio National's alleged violation of the policy in 2017. Plaintiff's claim was therefore not time-barred. We decline to consider plaintiff's hypothetical argument that summary disposition would have been inappropriate under MCR 2.116(C)(10).

Reversed and remanded for further proceedings. We do not retain jurisdiction. Plaintiff, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher